# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

YOUSEF ISMAIL,

    Plaintiff,

    v.

PATRICK DONAHOE, Postmaster General,
United States Postal Service,

    Defendant.

No. 11 C 8812
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

Plaintiff Yousef Ismail ("Ismail" or "Plaintiff") filed a two-count complaint against Defendant Patrick Donahoe, Postmaster General of the United States Postal Service ("USPS" or "Defendant") alleging that Defendant violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, by discriminating against him due to his race (Count I) and by retaliating against him after grievances and complaints had been filed (Count II). This matter is presently before the court on Defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the following reasons, Defendant's motion is granted in its entirety.

## I. STATEMENT OF FACTS

For the purposes of this motion, I consider the record in the light most favorable to Plaintiff, and draw all reasonable inferences in Plaintiff's favor. Plaintiff Yousef Ismail, born in Israel and raised in Jordan, came to the United States in 1992 and became a citizen in 1996. Plaintiff began working at Carpentersville Post Office, a branch of the United States Postal Service ("USPS") in August 2001 as a city letter carrier. Defendant USPS employed, at all relevant times, Ralph Kaiser as Postmaster. From the earliest conduct in question, Plaintiff's

1

immediate supervisor changed from Dennis Lesiz to Dennis Arneson.

### A. Events of 2003

From January to July 2003, Plaintiff filed several grievances against Defendant relating to a personal injury, assigned duties, and failure to grant requested emergency leave. These actions culminated in Plaintiff filing an Equal Employment Opportunity ("EEO") complaint against Defendant on August 7, 2003, in which Plaintiff asserted that Kaiser had discriminated against Plaintiff due to his race and disability from his prior injury. This matter was litigated all the way to this Court and granted in favor of defendant on summary judgment. *Ismail v. Potter*, No. 05-C-409, 2006 WL 2989293, at *1 (N.D. Ill. Oct. 18, 2006).

### B. Events of 2010

On December 10, 2010, Plaintiff began sorting through the mail for his route when supervisor Dawn Ellison approached him. Ellison was filling in for Plaintiff's immediate supervisor, Arneson. Ellison asked if he would be late returning from his route, and Plaintiff responded that he would let her know if he needed any additional time. Shortly thereafter, Ellison told Kaiser that Plaintiff would be late and asked Kaiser to speak with Plaintiff.

Kaiser approached Plaintiff and asked him why he was going to be late. Although Plaintiff stated that he would not be late and had no reason to believe he would return late from his route, he told Kaiser that the snow on the streets and sidewalks could affect his route. Plaintiff informed Kaiser that he would not be late and invited Kaiser to come out and watch his route. Plaintiff left the post office early to ensure his timely return, and Kaiser went out to observe him on his route. Around ten minutes into his route, at roughly 912 Berkley Road, Plaintiff became aware that Kaiser was observing Plaintiff.

At this particular point along his route, Plaintiff could not simply cross through the yard

due to bushes along the property line. Plaintiff approached the sidewalk to walk over to the next home, but Kaiser ordered Plaintiff to use the street instead. Plaintiff instead walked across the sidewalk, through the snow, and kept on his route towards the next mailbox. Kaiser exited his vehicle and approached Plaintiff where they exchanged words. Kaiser demanded to know why Plaintiff was not following orders while Plaintiff protested that he was doing as he had been ordered.

Feeling threatened, Plaintiff used his cell phone to dial 911 to call the police while continuing on his route, and Kaiser returned to his vehicle. Upon arriving on the scene, Police Officer Straub spoke with Plaintiff. Plaintiff informed Officer Straub that Kaiser had been threatening him. The officer told Plaintiff that this seemed likely to be an employment issue and not something for the police. The officer told Plaintiff that he should call his union.

Kaiser then returned to the post office and spoke with Labor Relations who suggested charges of insubordination after further observation with a witness. Plaintiff continued on his route and contacted his union representative who informed him that if Kaiser returned, Plaintiff had a right to have a union representative present for any further discussions.

Just over an hour later, Kaiser returned to Plaintiff's route with Ellison. The two observed Plaintiff deliver mail to an entire street before approaching him. They questioned Plaintiff about his chosen path, and Plaintiff informed the pair that he wanted a union representative if the questioning was going to continue. Ultimately, Kaiser ordered Plaintiff to immediately stop delivering mail and return to the post office.

Later that day, Plaintiff was put on emergency placement, upon a recommendation by Labor Relations. A hearing was held on December 16, 2010, where the Labor Relations department along with a postmaster from another facility agreed to issue a two-week suspension

without loss of pay or time. Plaintiff was not informed of this decision until Kaiser instructed Plaintiff to return on December 28, 2010, and issued the two-week suspension. As a result, Plaintiff was on emergency placement for a total of seventeen days without pay.

On March 25, 2011, Plaintiff filed a complaint with EEO regarding the events from December 2010. Plaintiff complained about being disciplined twice for the same issue and the resulting loss of wages. Plaintiff was ultimately compensated for all but one day and a few hours of pay and given an amount to compensate for the overtime he might have worked—but did not work—during the time period that he was off duty due to the holidays.

**C. Events of 2012**

On March 2, 2012, Plaintiff was involved in a verbal confrontation with two other postal workers, David Sherrill and Hye Suk Kim. Plaintiff had approached Sherrill and Kim as they argued, exchanging harsh words with Sherrill. As a result, Sherrill reported the incident to his supervisor Arneson, claiming that Plaintiff had threatened him. Arneson collected three statements: one from Sherrill, one from Plaintiff, and one from Kristy Heitmann, who had observed the verbal exchange. Arneson took all of the statements to Kaiser who was already on the phone with Labor Relations. Labor Relations suggested that both employees be put on emergency placement. Arneson agreed and followed through with the advice. Both men were on emergency placement until March 13, 2012, when they were both given letters of removal, terminating them from the Postal Service.

Plaintiff filed an EEO complaint regarding these actions in June 2012. Plaintiff and Sherrill also filed grievances with the union to challenge their termination. Sherrill's grievance was settled in May 2012, and he returned to work. Plaintiff's matter, however, was not settled until July 18, 2012. When Plaintiff returned to work on July 18, 2012, Kaiser approached him in

his casing unit, which is only two feet by four feet. Kaiser claims to have greeted Plaintiff three times earlier that morning and was ignored all three times. Kaiser asked Arneson to bring over the mail carrier's manual (M41) to have Plaintiff read the section exhorting mail carriers to be courteous and obliging, asking if he knew what the word courtesy meant. Plaintiff responded that he did. Kaiser claims that this is when Plaintiff threatened him by saying, "If you ever try to fire me again, I will kill you." Arneson, however, was standing a short distance behind the men and the batteries to his hearing aids were low so he could not hear the exchange. Arneson did, however, recall hearing Kaiser say something afterwards along the lines of, "I'm not going to tolerate that." Both men left the casing unit shortly thereafter, at which point Kaiser contacted the police.

Ten minutes later, Kaiser returned with Police Officer Bone and took Plaintiff into an office. The officer interviewed all three men but did not detain Plaintiff. Plaintiff, however, was escorted out and sent home on administrative leave without any loss of pay or benefits. Defendant declined to take any further action.

**D. Comparators**

Dana Hall, Ray Adam, and Donald Daley are all non-Middle Eastern individuals employed by Defendant who have received either a warning or suspension due to their conduct.

Dana Hall, a non-Middle Eastern female, received a removal notice due to attendance problems, most likely caused by her problems related to alcohol. On two separate incidents in 2010 and 2011, Hall arrived to work as a window clerk where she smelled of alcohol, displayed erratic behavior, and disregarded her supervisor's instructions. Though Kaiser was not present during the first, he contacted the police during the 2011 incident to have Hall escorted home before she left of her own accord. Before eventually receiving a removal notice, Hall was taken

5

off the clock and received a fourteen-day suspension. Hall, however, resigned from her position before removal.

Ray Adam, a non-Middle Eastern male, received a letter of warning after he was involved in a vehicle collision after performing a three-point turn in June 2007. Postal service workers are generally not supposed to put their vehicles in reverse unless otherwise allowed on certain roads. Adam had been on a road where postal workers are permitted to reverse their vehicles. Arneson issued the warning, and Kaiser was out of the post office that day.

Donald Daley, a non-Middle Eastern male, crashed his postal vehicle into a forklift and broke his mirror in March 2008. Upon returning to the post office, the glass shards littered the driveway, making it hazardous to other vehicles and postal workers. Daley failed to report the accident to his supervisors. Daley received a fourteen-day suspension issued by Arneson and concurred to by Kaiser.

## II. LEGAL STANDARD

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 625 (7th Cir. 2001). The Court's "function is not to weigh the evidence but merely to determine if there is a genuine issue for trial." *Bennett v. Roberts*, 295 F.3d 687, 694 (7th Cir. 2002).

Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts

demonstrating that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The nonmoving party must offer more than "[c]onclusory allegations, unsupported by specific facts" in order to establish a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) (citing *Lujan v. Nat'l Wildfire Fed'n*, 497 U.S. 871, 888 (1990)). A party will be successful in opposing summary judgment only if it presents "definite, competent evidence to rebut the motion." *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000). I consider the record in the light most favorable to the nonmoving party, and draw all reasonable inferences in the nonmoving party's favor. *Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 471 (7th Cir. 2002).

## III. DISCUSSION

### A. Discrimination Claim

Under Title VII, employers may not discriminate "against any individual with respect to his compensation, terms, condition, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). A Title VII claimant may prove discrimination by using the direct or indirect method of proof. *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004). Here, Plaintiff has presented no direct evidence of discrimination so he must establish his claim under the indirect, burden-shifting method of proof set forth in *McDonnell Douglas Corp. v. Green*. 411 U.S. 792, 793, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).

Under the well-established burden-shifting analysis outlined in *McDonnell Douglas,* in order to survive summary judgment, Plaintiff must establish that (1) he was a member of a protected class; (2) he was meeting the Postal Service's legitimate job expectations; (3) he was subjected to a materially adverse employment action; and (4) others outside the protected class

were more favorably treated. *Id.* at 802; *Hughes v. Brown*, 20 F.3d 745, 746 (7th Cir. 1994). Only after Plaintiff makes a *prima facie* showing does the burden shift to Defendant to articulate a legitimate, nondiscriminatory explanation for the employment action. *McDonnell Douglas*, 411 U.S. at 802; *Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 751 (7th Cir. 2006). Plaintiff, then, would have the opportunity to prove that Defendant's explanation was a pre-text for discrimination. *Gates v. Caterpillar, Inc.*, 513 F.3d 680 (7th Cir. 2008).

There is no dispute that Plaintiff is a member of a protected class due to his race and national origin. Although Defendant contends that Plaintiff has not suffered an adverse employment action because he received back pay for his emergency placement, the Seventh Circuit has stated that "a suspension that ends in reinstatement and reimbursement can constitute an adverse employment action," *Phelan v. Cook Cnty.*, 463 F.3d 773, 781 (7th Cir. 2006), and so Plaintiff has suffered a materially adverse employment action. At issue between the parties is (1) whether Plaintiff was meeting Defendant's legitimate job expectations and (2) whether there existed similarly situated comparators who were treated more favorably than Plaintiff. I will discuss each in turn.

**1. Legitimate Job Expectations**

Defendant argues that Plaintiff was not meeting its legitimate employment expectations when he disobeyed an order to walk on the street where there was no snow and instead walked over a pile of snow debris, creating issues regarding safety. Defendant relies on Officer Straub's declaration to corroborate the manner in which Plaintiff behaved: with his hands out, as if on a tightrope. Based on Plaintiff's unwillingness to follow orders, Defendant contends that it decided to place Plaintiff on emergency placement, as recommended by Labor Relations.

While Plaintiff disputes Defendant's specific account of what occurred on December 10,

8

2010, Plaintiff has failed to raise a genuine issue of material fact that Plaintiff was not meeting Defendant's legitimate employment expectations. Instead, Plaintiff attempts to shift the focus from his failure to meet the expectations by confusing what orders were given and the manner in which he behaved. Plaintiff claims that Defendant's orders were to cut across the lawn, not to avoid walking over the snow debris piles. Pl.'s Local Rule 56.1 Statement of Additional Facts 6, ECF No. 89. Plaintiff further denies having walked in the manner described, stating that there was no way that Defendant could have observed this type of behavior. Pl.'s Resp. to Def.'s Local Rule 56.1 Statement of Facts 5, ECF No. 88. Plaintiff, however, does confirm that Defendant gave him the "direct order to walk on the street where there is no snow," but that, instead, Plaintiff "walked briefly across the sidewalk to get to the yard." Pl.'s Additional Facts 5-6, ECF No. 89. When Defendant approached Plaintiff, Plaintiff again confirmed his disobedience by "point[ing] to the snow and show[ing] Mr. Kaiser his footprints indicating that [he] was following the direct order" when in fact, the footprints evidenced the opposite. *Id.* at 6. Therefore, at the heart of the issue, there is no dispute that Defendant gave Plaintiff a direct order and that Plaintiff subsequently disobeyed.

Plaintiff, however, contends that his testimony, where it contradicts the testimony of Defendant, defeats summary judgment because it establishes a genuine issue of material fact. *See Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) (holding that a plaintiff's "very detailed factual account" conflicting with defendant's testimony is sufficient to raise a question of material fact to defeat summary judgment). Unlike the plaintiff in *Payne*, however, Plaintiff's differing account does not present conflicting detailed facts on a material issue (i.e. Defendant's direct order to walk on the street) but has merely presented a different characterization of what occurred based on what Defendant has established.

There is no genuine dispute that Plaintiff disobeyed a direct order given by Defendant to walk on the street, rather than the sidewalk, to avoid the snow. It is not this Court's role to make its own assessment of whether the employee was adequately performing at the time of his termination, but to consider whether the employer believed he was. *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 689 (7th Cir. 2008). To that end, this Court will not act as "a 'super-personnel department' intervening whenever an employee feels he is being treated unjustly." *Cardoso v. Robert Bosch Corp.*, 427 F.3d 429, 435 (7th Cir. 2005) (internal citations omitted). So long as the employer's expectations are legitimate and not merely a cover for discrimination, it is acceptable for the employer to set unreasonable standards and remove employees who do not meet them if it chooses to do so. *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1571 (7th Cir. 1989).

Here, Defendant's order was given not because of Plaintiff's race or national origin. There is no evidence that Defendant's expectations were merely a cover for discrimination. Rather, Plaintiff failed to obey an order given for legitimate issues concerning safety. In any case, Defendant may set unreasonable standards. Even if Plaintiff himself did not believe walking on the street was the safest option, it is not this Court's role to assess the wisdom of Defendant's decision. On the basis of his disobedience, Plaintiff was not meeting Defendant's legitimate job expectations.

**2. Similarly Situated Comparators**

Plaintiff may still establish a *prima facie* case of discrimination if he can produce sufficient evidence to raise an inference that Defendant applied its expectations against him in a disparate manner (i.e. he was singled out because he was Middle Eastern). *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319 (7th Cir. 2002). If Plaintiff can show that Defendant applied expectations

more favorably to a similarly situated comparator, the second and fourth prongs of *McDonnell Douglas* merge—allowing Plaintiff to establish a *prima facie* case, stave off summary judgment for the time being, and proceed to the pretext inquiry. *Curry v. Menard,* 270 F.3d 473, 478 (7th Cir.2001) (plaintiff excused from showing met employer's expectations when employer punished plaintiff in a disparate manner for discriminatory reasons); *Gordon v. United Airlines, Inc.,* 246 F.3d 878, 886–87 (7th Cir.2001); *Flores v. Preferred Tech. Group,* 182 F.3d 512, 515 (7th Cir.1999).

The purpose of identifying a similarly situated comparator is to eliminate other possible explanatory variables, "such as differing roles, performance histories, or decision-making personnel, which helps isolate the critical independent variable"―discriminatory animus. *Humphries v. CBOCS W., Inc.*, 474 F.3d 387, 405 (7th Cir. 2007), *aff'd*, 553 U.S. 442 (2008). Similarly situated employees "must be 'directly comparable' to the plaintiff 'in all material respects,'" but they need not be identical in every way. *Patterson v. Indiana Newspapers, Inc.*, 589 F.3d 357, 365-66 (7th Cir. 2009) (quoting *Raymond v. Ameritech Corp.*, 442 F.3d 600, 610-11 (7th Cir. 2006). The differences between a plaintiff and the comparators must not be "so significant that they render the comparison effectively useless." *Humphries*, 474 F.3d at 405; *see also Crawford v. Ind. Harbor Belt R.R. Co.*, 461 F.3d 844, 846 (7th Cir. 2006).

Generally, the plaintiff must show at least that the comparators (1) "dealt with the same supervisor," (2) "were subject to the same standards," (3) "engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 690 (7th Cir. 2008) (quoting *Snipes v. Ill. Dep't of Corrections*, 291 F.3d 460, 463 (7th Cir. 2002)). "Whether a comparator is similarly situated is 'usually a question for the fact-finder,' and summary judgment

is appropriate only when 'no reasonable fact-finder could find that plaintiffs have met their burden on this issue.'" *Coleman v. Donahoe*, 667 F.3d 835, 846-47 (7th Cir. 2012) (quoting *Srail v. Village of Lisle*, 588 F.3d 940, 945 (7th Cir. 2009)).

Plaintiff has named three possible comparators—Dana Hall, Ray Adam, and Donald Daley—to establish his discrimination claim. The parties do not dispute that Plaintiff and comparators, even if they had different titles and roles, were subject to the same standards; they were all evaluated under the same employment policies to make them similar enough to enable a meaningful comparison. *See, e.g.*, *Humpries*, 474 F.3d at 405; *Coleman*, 667 F.3d at 848. At issue between the parties is (1) whether the Plaintiff and the comparators dealt with the same decision maker and (2) whether the Plaintiff and the comparators were engaged in similar conduct without differentiating or mitigating circumstances to warrant more favorable treatment.

*a. Same Supervisor*

The similarly situated analysis normally entails the existence of a common supervisor. *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617 (7th Cir. 2000). When there are different decision makers, they "may rely on different factors when deciding whether, and how severely, to discipline an employee." *Ellis v. United Parcel Serv.*, 523 F.3d 823, 826 (7th Cir. 2008); *see also Little v. Ill. Dep't of Revenue*, 369 F.3d 1007, 1012 (7th Cir. 2004). Although there may be some confusion between the direct supervisor and decision maker, the issue is "not only who proposed the [action] but [also] who was responsible for the decision." *Coleman*, 667 F.3d at 848 (citing *Schandelmeier-Bartels v. Chicago Park Dist.*, 634 F.3d 372, 379 (7th Cir. 2011) (internal citations omitted)).

Adam is not an appropriate comparator for Plaintiff because Kaiser had no role in his disciplinary action. Adam's permissible three-point turn resulted only in a warning from

Arneson. Letters of warning do not require a concurring official and can be issued simply by a supervisor. *See* Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J. 10, ECF No. 87. As such, Kaiser, who was not even at the post office that day, did not decide—and was not required to play a role in—Adam's employment action and cannot be considered the same decision maker to establish Adam as a similarly situated comparator.

Kaiser, however, was the decision maker for both Hall and Daley: Kaiser contacted the police during Hall's second incident and was the concurring official on Daley's suspension.

*b. Similar conduct treated more favorably*

The similarly situated inquiry does not require that there be a "precise equivalence in culpability between employees," *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 283 n.11 (1976), but rather acts of "comparable seriousness," *McDonnell Douglas*, 411 U.S. at 804; *see also Peirick v. Ind. Univ.-Purdue Univ. Indianapolis*, 510 F.3d 681, 689 (7th Cir. 2007).

The "comparable severity" of Plaintiff's and Daley's acts is unquestionable as evidenced by the charges. Daley was charged with (1) failure to report an accident and (2) failure to perform your duties in a safe manner, whereas Plaintiff was charged with (1) failure to follow instructions and (2) failure to perform your duties in a safe manner. Although both Plaintiff and Daley received the same fourteen-day suspensions with pay, Plaintiff argues that his seventeen-day emergency placement without pay showed that he was treated less favorably than Daley.

Plaintiff, however, fails to appreciate a key difference between Daley and himself; Plaintiff and Daley responded quite differently to their charges. When confronted the morning after about both the accident and the glass left on the roadway, Daley acknowledged his failure to report the accident and failure to remove the safety hazards from the roadway. Pl.'s Resp. to Def.'s Local Rule 56.1 Statement of Facts Ex. 15 1, ECF No. 88-15. Plaintiff, however, persisted

on his account of the events even at a pre-disciplinary hearing contrary to third-party testimony and statements, Def.'s Local Rule 56.1 Statement of Facts Ex. A 2-3, ECF No. 88-3, and later refused to sign the notice of suspension on December 28 when his emergency placement ended. *Id.* at 3. Daley's acceptance of responsibility serves as a mitigating circumstance to explain the difference in the use of an emergency placement. Though Daley is a suitable comparator with respect to conduct, his actions afterwards allow a distinction to be drawn, upon which Plaintiff can no longer consider Daley as similarly situated.

The "comparable seriousness" between Plaintiff and Hall is a bit harder to establish as there is no direct connection between disobeying an order and showing up for work intoxicated. Assuming though that they can be considered of "comparable seriousness," Hall's treatment also does not support Plaintiff's discrimination claim. Hall was taken off the clock like Plaintiff's emergency placement. Hall was also issued a fourteen-day suspension like Plaintiff. Ultimately, Hall was both issued a notice of removal and not compensated back pay. To that end, Hall was actually treated worse—not more favorably—than Plaintiff.

All of Plaintiff's named comparators—Hall, Adam, and Daley—fail to establish how Plaintiff was treated less favorably than those similarly situated. Because Plaintiff has failed to establish that he was meeting Defendant's legitimate employment expectations and that Defendant was treating similarly situated comparators more favorably, Plaintiff's *prima facie* discrimination claim fails through the indirect method of proof. Therefore, the burden neither shifts to the Defendant to articulate a nondiscriminatory explanation nor do I need to address any argument that Defendant's reasoning was pre-textual.

**B. Retaliation Claim**

Title VII makes it unlawful for an employer to take an adverse employment action

against an employee as a result of his opposing any unlawful employment practice. 42 U.S.C. § 2000e-3(a). Like discrimination claims, retaliation claims may be proven by either the direct or indirect method of proof. Under the direct method, Plaintiff must show that: (1) he engaged in a statutorily protected activity; (2) he suffered a materially adverse action; and (3) a casual connection exists between the two. *Humphries*, 474 F.3d at 404.

Plaintiff claims that he suffered an adverse employment action for engaging in a protected activity, to wit, filing complaints with the EEOC. Again, there is no dispute that Plaintiff engaged in a statutorily protected activity when he filed EEO complaints back in 2003 and 2010 and that, subsequently, he suffered a materially adverse employment action. Plaintiff, however, fails to establish a causal connection between his complaint filing and his suspension.

Plaintiff has not provided direct evidence of his retaliation claim, such as by admission by Defendant, and must proceed on circumstantial evidence. *See O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011); *see also Rhodes*, 359 F.3d at 504. Generally, causal connection is established circumstantially by either (1) suspicious timing; (2) evidence that similarly situated employees were treated differently; or (3) evidence that the employee did not deserve the punishment and that the employer's reason for the punishment is a pretext for discrimination. *Volovsek v. Wis. Dep't of Agric., Trade & Consumer Prot.*, 344 F.3d 680, 689-90 (7th Cir. 2003). Plaintiff has not established that other employees engaged in protected activity and were treated more favorably. Nor has Plaintiff established that Defendant's reason for punishment was a pretext for discrimination.

Plaintiff also fails to establish a causal connection through suspicious timing. The December 2010 emergency placement occurred seven years after Plaintiff's last filing; that is far too distant a time to establish a causal connection. *See Tomanovich v. City of Indianapolis*, 457

F.3d 656, 665 (7th Cir. 2006) (holding that four months is too long to establish a causal connection). Even the 2012 events occurred far too long after the March 2011 filing to establish a causal connection.

Even under the indirect method of proof, Plaintiff's retaliation claim would fail. Like a discrimination claim, the indirect method requires Plaintiff to establish that he: (1) engaged in a statutorily protected activity; (2) met the employer's legitimate job expectations; (3) suffered an adverse employment action; and (4) was treated less favorably than similarly situated employees who did not engage in the statutorily protected activity. *Simpson v. Office of Chief Judge of Circuit Court of Will Cnty.*, 559 F.3d 706, 717 (7th Cir. 2009). Additionally, the plaintiff must also establish that retaliation was the "but-for" reason, and not simply a motivating factor, for the alleged adverse action. *Univ. of Tex. Sw. Med. Center v. Nassar*, 133 S. Ct. 2517, 2534 (2013).

As previously discussed, Plaintiff did not meet Defendant's legitimate employment expectations and, consequently, he fails to establish his retaliation claim. Simply attempting to rehash his alleged racial discrimination claim as "retaliatory measures" is not enough to raise a genuine issue of material fact to survive a motion for summary judgment.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is granted in its entirety.

ENTER:

*[signature: James B. Zagel]*

James B. Zagel
United States District Judge

DATE: July 14, 2015